## SHOEMAKER et al. v. MERROW.

(Circuit Court of Appeals, Third Circuit. May 18, 1894.)

### No. 14.

1. Patents — Infringement Suit — Effect of Admissions in Interference Proceedings.

A party to an interference proceeding practically withdrew from the contest by means of a stipulation by which he agreed that the preliminary statement of the other party should be accepted as evidence on the question of priority, that no additional evidence should be received, and that the matter should be decided on this evidence alone, without argument. A patent having been issued to his opponent, he accepted a license thereunder. *Held,* that the stipulation amounted to an admission of priority of invention, sufficient, as evidence in a subsequent suit for infringement, to show prima facie that the successful party in the interference was the first inventor.

2. Same — Withdrawal of Claim — Estoppel.

One who retires from an interference proceeding, and withdraws his claim for the specific element forming the subject of the interference, is thereafter precluded from claiming such element under his patent. 59 Fed. 120, reversed.

3. Same — Limitation of Claims — Crocheting Machine.

The Merrow patent No. 428,508, for a crocheting and overseaming machine, construed, and *held* not infringed. 59 Fed. 120, reversed.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

This was a suit by Joseph M. Merrow against John Shoemaker and others for infringement of letters patent No. 428,508, issued to complainant May 20, 1890, for a "crocheting or overseaming machine." The circuit court rendered a decree dismissing some of the

defendants, but in favor of the complainant as to the others.    The opinion is reported in 59 Fed. 120, and contains a full statement of the facts.    Defendant appealed.

Joseph C. Fraley and S. S. Hollingsworth, for appellants.
Joseph B. Church, for appellee.

Before ACHESON, Circuit Judge, and BUTLER and WALES, District Judges.

BUTLER, District Judge.    No statement of the case is necessary to an understanding of what we propose to say, and none therefore will be made.    Of the numerous errors assigned the following only need be noticed:

"(7) The circuit court erred in not holding that the conduct of the complainant, Joseph M. Merrow, in the matter of the interference declared in the United States patent office between the application of said complainant and the application of said George D. Munsing and the application of Thomas J. Holton and Frank Malsch, constituted an admission against interest by the said complainant which is competent evidence against him of the fact of prior invention by said George D. Munsing of the subject-matter in issue in said interference.    (8) The circuit court of the United States for the eastern district of Pennsylvania erred in not holding that any construction of said first, second, third, and fourth claims of said letters patent No. 428,-508, dated May 20th, 1890, which would include the defendants' machine, would render the said claims invalid by reason of the fact that prior to the invention by the said complainant, Joseph M. Merrow, of the subject-matter of the said claims, a machine, substantially identical with the defendants' machine had been known to and used by George D. Munsing, of and at Minneapolis, Minn."

We may adopt all the circuit court has said, except what relates to the defense based on Munsing's patent.    That patent covers everything embraced in the claims before us.    The effort to distinguish it by reference to the fact that these claims are broader in terms than those of Munsing is we think futile.    The invention shown and claimed is the same.    While Merrow's claims do not specify the "finger," as Munsing's do, they embrace it by implication.    That Merrow so understood is shown by the fact that he never made a machine without it (or its plain equivalent), and by his assertion that the respondents' machine, which contains the "finger" as a necessary element, is an infringement.    But, furthermore, Munsing's ninth claim says nothing about the "finger," and, consequently, is as broad even in terms as Merrow's.    If it be conceded, however, that the omission of the latter to specify the "finger" as an element distinguishes his patent from Munsing's, then it must also be conceded that it distinguishes the respondents' machine from Merrow's, for theirs contains the "finger," will not operate without it, and is identical with Munsing's.

The only question, therefore, is, did Munsing anticipate Merrow? The proofs show that Merrow, Holton & Malsch, and Munsing severally made application for patents for "crocheting machines,"—the first on September 1, 1887, the second on September 8, 1888, and the third on October 17, 1888,—consisting of similar combinations, containing nothing new (at least as respects the claims under consideration) but the substitution of an "intermitting feed mechanism"

(which admits of two or more stitches being taken in the same place) for the old mechanism which fed continuously, after each stitch. The patent office, after expressing doubt of the patentabilty of either, declared interferences—first, between the former two applicants, and, second between all three. While certain of the respective claims only were named in the issue formed, those named embrace substantially everything covered by the invention. As between Merrow and Holton & Malsch, the decision was in favor of Merrow. This result lost Holton & Malsch their place in the other contest, and it proceeded between Merrow and Munsing alone. After taking testimony, the parties entered into a contract as follows:

"It is hereby stipulated and agreed by and between the parties hereto that the sworn statement of George D. Munsing, executed on the 20th day of September, 1889, and filed for record in this cause September 24th, 1889, be received and accepted as evidence on his behalf on the issues of priority of invention now pending between the parties hereto, with the same force and effect as though regularly taken upon notice, and duly filed in this case; that no further or additional evidence shall be taken or received; that the case shall be taken up and decided at the earliest possible moment by the examiner of interferences, without argument, and upon the evidence contained in said sworn statement."

The sworn statement of Munsing, referred to above, is as follows:

"That he conceived the invention set forth in the declaration of interference on or about the 1st day of December, 1882; that on or about the 1st day of June, 1883, he made drawings of the invention; that on or about the 1st day of June, 1883, he first explained the invention to others; that on or about the 15th day of July, 1883, he begun work on a full-sized machine embodying such invention, which machine was completed about the 10th day of November, 1884, and that on or about the 10th day of November, 1884, he successfully operated said machine, and that he has since built other machines embodying said invention, and has used the same; that he has made no models except full-sized working machines."

Thus Merrow withdrew from the contest, and permitted—indeed, assisted—Munsing to make out his case, and obtain a patent, under which he (Merrow) was to have an exclusive license, paying a royalty of $10 for each machine manufactured thereunder. It is unnecessary to pass upon the question of estoppel, which the respondents base on this conduct. It is sufficient to consider its effect as evidence on the question of priority. We regard it as an admission of Munsing's priority, and his consequent right to a patent. The inference seems reasonable that Merrow proceeded far enough with the contest to discover that a continuance would result disastrously to him, then abandoned it, and united with Munsing to obtain a patent for their joint benefit. This inference finds support in Merrow's testimony. Any other view seems inconsistent with his conduct. Why, otherwise, should he abandon a contest thus entered upon and prosecuted nearly to its close, and subject himself to the payment of a royalty on the machines to be manufactured, if he was the first inventor, and consequently entitled to the monopoly of such manufacture without paying tribute to anybody? It is said he was tired of the contest, and therefore compromised. Men do not commonly tire of such contests until their hopelessness is discovered.

We see little evidence of compromise in the transaction. Munsing got the patent; and, although Merrow got a license under it, he got it at a pretty large price. But, whatever may have induced his action, it should be regarded as an admission of Munsing's priority, fully sufficient to make out a prima facie case against him. If he could have answered this, it was his privilege to do so, and he would no doubt have done it. As he did not, we must hold it to be decisive.

But suppose it was not shown that Munsing anticipated him, and his patent was consequently held to be valid. The result would be the same. His claims in such case would necessarily be so construed as to exclude the "finger" and its equivalents. After withdrawing a specific claim for this element, in favor of Munsing, he would be precluded from setting it up. His patent, if valid, is for the combination minus the "finger,"—a device whose novelty consists in dispensing with this element. The respondents, as before suggested, do not infringe such a device; for they use the "finger," and their machine will not work without it.

The decree of the circuit court is therefore disaffirmed, and the bill must be dismissed with costs.