AMERICAN LAUNDRY MACHINERY MFG. CO. v. ADAMS LAUNDRY MACHINERY CO.

(Circuit Court, N. D. New York. May 15, 1908.)

PATENTS—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION.

A preliminary injunction denied to restrain infringement of the Barnes patent, No. 684,776, for a clothes drier, on the showing made as to the prior art affecting the construction and perhaps validity of the patent.

[Ed. Note.—Grounds for denial of preliminary injunction in patent infringement suit, see note to Johnson v. Foos Mfg. Co., 72 C. C. A. 123.]

In Equity. Application for injunction pendente lite restraining the defendant from making and selling what are known as "conveyer dry rooms," and which are alleged to infringe the first six claims of United States letters patent No. 684,776, dated October 22, 1901, to William M. Barnes for "clothes dryer."

Church & Rich (Frederick F. Church, of counsel), for complainant.
Wm. W. Morrill (Walter E. Ward and E. B. Stocking, of counsel), for defendant.

RAY, District Judge. The six claims of United States letters patent to William M. Barnes, No. 684,776, dated October 22, 1901, for clothes dryer, and alleged to be infringed by the defendant, read as follows:

"1. In combination, a drying-room having heating-coils extending upwardly on the side thereof, a conveyer traversing said room, the central portion of said room beneath the conveyer being devoid of heating-coils and an air-circulating device in said room above said conveyer driving said air downward.

"2. In combination, a drying-room having heating-coils extending upwardly on the side thereof, a conveyer traversing said room, the central portion of said room beneath the conveyer being devoid of heating-coils and an air-cir-

culating device in said room, substantially central of and above said conveyer, driving said air downward.

"3. In combination, a drying-room having heating-coils extending upwardly on the sides thereof, a conveyer traversing said room, the central portion of said room beneath the conveyer being devoid of heating-coils and an air-circulating device in said room above said conveyer driving said air downward.

"4. In combination, a drying-room having heating-coils extending upwardly on the sides thereof, a conveyer traversing said room, the central portion of said room beneath the conveyer being devoid of heating-coils and an air-circulating device in said room, substantially central of and above said conveyer, driving said air downward.

"5. The combination, with a drying-room provided with heating-coils on the sides only of the lower portion of said room, of a conveyer traversing said room above said heating-coils and an air-circulating device in said room above said conveyer and substantially central of the drying-room, said circulating device driving the air in said room downward.

"6. The combination, with a drying-room, provided with heating-coils on the sides only of the lower portion of said room, of a conveyer traversing said room above said heating-coils and at substantially the same level throughout, and an air-circulating device in said room above said conveyer and substantially central of the drying-room, said circulating device driving the air in said room downward."

The defendant claims (1) that there is no patentable invention disclosed in view of the prior art; that the patent would not have been granted had the whole prior art been before the Patent Office; (2) that the alleged combination is but a mere aggregation; (3) that, conceding patentable invention, it is of a very narrow character, in view of the claims and file wrapper; and that, narrowly construed, as it must be, the defendant does not infringe. The defendant insists that a negative element—that is, the absence of heating-coils from the central part of the drying-room—is an essential part of the complainant's "clothes drier," and that, as defendant's device has heating-coils so located, it does not infringe. Defendant insists that the file wrapper of the patent in suit shows that the patent was granted when and only when this specific limitation was placed in the claims, and that in this respect only is it materially distinguishable from the prior art. The defendant also insists that the prior adjudication of the validity of this patent by Judge Holland in Barnes v. Lingo, 151 Fed. 59 (Eastern District of Pennsylvania), should be disregarded, as it is apparent that Judge Holland did not have the whole prior art before him in considering the validity of the patent.

In reading the claims in suit we find that in claims 1, 2, 3, and 4 we have the words, "the central portion of said room beneath the conveyer being devoid of heating-coils," and that in claims 5 and 6 we have the words "drying-room provided with heating-coils on the sides only of the lower portion of said room." This is a combination patent, and in claim 1 the combination consists of (1) a drying-room having (a) heating-coils extending upwardly on the side thereof, (b) a conveyer traversing said room, (c) the central portion of said room beneath the conveyer being devoid of heating-coils, and (d) an air-circulating device in said room above said conveyer driving said air downward. The distinguishing features of this room, as mentioned in claim 1, are the heating-coils extending upwardly on the side of the room, (2) the absence of heating-coils from the central part of the room beneath the convey-

er, (3) the conveyer for carrying the material to be dried, and (4) an air-circulating device in the room located above the conveyer driving the air downward. Claim 2 locates the air-circulating device in said room "substantially central of" as well as "above said conveyer." Claim 3 is the same as claim 1, except it has "heating-coils extending upwardly on the sides" of the room, instead of side. Claim 4 is the same as 3, except the air-circulating device is central of, as well as above, the conveyer.

In the first four claims the heating-coils extend upwardly on the side or sides of the room, and there is no limitation as to distance. In these claims "the central portion of the room beneath the conveyer" is spoken of; but this does not necessarily mean that this "central portion" is the "central portion" of the room, unless it is understood that "a conveyer traversing said room" traverses the entire room. If the conveyer traverses the entire room, then the central portion of the room beneath the conveyer does not include the entire floor space of the room. I think a fair and sensible construction of the language of the claims is that the conveyer traverses the overhead part of the room substantially in all its parts, except near the coils and walls, not every portion, and that "the central portion of said room beneath the conveyer" includes all of the floor space not adjacent to the four walls of the room. In claims 5 and 6 the heating-coils are on the sides only of the lower portion of said room, and the conveyer traverses the room "above said heating-coils"; but I do not think this means that the conveyer is directly above the heating-coils. It is higher up in the room and traverses it from side to side. I think the combination of these claims is a room containing the heating-coils on the side or sides of the room only; a conveyer traversing the said room at a suitable distance from the floor; an air-circulating device in said room above the conveyer which so operates as to drive the air downward. These claims are so broad as to cover any heating-coils, but they must be located on one side or two or more sides of the room, and the room may have any desired number of sides.

While the patentee in his specifications describes a room, he does not refer to it in any way in these six claims except as a room, or limit his first six claims to such a room. The claims cover any conveyer which traverses the room and any air-circulating device which will drive the air downward. The sides of the room, including top and floor, confine the hot air; the heating-coils heat the air at the side or sides of the room; and the circulating device circulates the hot air by driving it downward mainly in the more central part of the room—that is, in the parts away from the sides of the room. It is not necessary in all the claims that the circulating device be located centrally of the overhead part of the room. As the tendency of the heated air, heated by the coils, is to rise, and as the circulating device drives the air from the top of the room, where it becomes cooler, downward, and it flows thence to the coils, from which the heated or hotter air is rising, it is evident that there is a substantially even heat maintained throughout the room, with a general down draft, except next the sides of the room having heating-coils where there is an upward current. This is

the general course or current of the air; but it is also evident that with angles and clothing on the moving conveyer there will be side currents and eddies of the heated atmosphere. No one of these claims refers to the specifications for any limitation. The claims are not limited to the devices shown and described. It is evident that the purpose is to maintain an equal temperature in all parts of this room, to keep the air in constant circulation, and to keep the articles to be dried and carried on the conveyer in constant motion and exposed equally. and uniformly to the heated and, generally speaking, downwardly moving current of air.

Is this a new conception, and do we have new means, or a new combination of old elements furnishing improved means for drying clothing? If we have a new combination of old elements, do we have a new mode of operation, with new or with improved results? If so, we may have invention. This depends on the nature and extent of the changes and improved results. We have nothing to do, in considering these six claims, with the particular form or construction of the room, or of the conveyer, or of the air-circulating device, except that it must be so constructed or operated as to drive the air downward. The other claims relate to those details of construction. The patentee in his specifications says:

"My invention, speaking generally, belongs to that class of driers in which the articles to be dried are carried by an endless carrier, and, further, in carrying the goods secured to the endless carrier through a heated room; the goods being dried in their passage through this room. My invention has for its object to accomplish the drying in a more thorough and certain manner. To that end, speaking generally, my invention consists in a carrier which traverses the drying-room on edge and passes around guiding-wheels on vertical axes. By this construction any number of traverses or turns in the drying-room may be made without the guiding wheels interfering with the articles carried by the carrier, and thus may all be at the same level in the room, whereby the articles are constantly subjected to the most efficient temperature in the room. * * * Further, my invention comprises certain improvements in the drying-room itself, and the relation of the heating medium, carriers, etc., to each other whereby the best result is obtained, etc. * * * By the construction described it will be seen that the heating-coils are at the sides of the room and the fan above the conveyer. The air rises from the bottom along the sides, being heated by the heating-coils, and the fan forces it downward through the center to the bottom, from which it again rises, as before described, thus producing a perfect circulation. * * * Further, the arrangement of the heating-coils is at the sides of the room and the fan above the conveyer carries a perfect circulation of the heat and a complete and rapid drying. * * * I also desire it to be understood that the arrangement of drying-room with the heating-coils at the sides of the room and the fan above the conveyer has advantages, whether the conveyer be used on edge or flat."

While not described or mentioned in the patent, it is said that this arrangement of heating-coils on the sides alone with fan (air-circulating device) at the top of the room above the conveyer driving the current of air downward, has advantages, such as keeping the clothing hung on the carrier or conveyer in a perpendicular position, not liable to be blown off, as the current when the conveyer moves is downward; the air in the room of an even temperature throughout, as the coldest air at the sides is first heated. The absence of heating-coils in the central part of the room prevents interference with the down cur-

rent from the fan in the central part, as no heat is rising there, and also prevents clothing falling from the carrier or conveyer from coming in contact with heated coils and becoming soiled or burnt, and also allows easy entrance into the room and unobstructed movement therein when necessary. All these advantages are perfectly obvious. Radiators and steam and hot water pipes have been placed on the outer edges of the room generally to insure the better and more uniform heating of the room, as well as to be out of the way. All this was old and common knowledge in 1900 when this patent was applied for. So it was common knowledge that air when in circulation, whether cold or hot, would dry clothing more quickly and better than when still. So that a down current of air would better maintain the perpendicular position of hanging clothing than a side or horizontal current. It was nothing new that air in a room, like water in a barrel, into which heat is being injected at one or two points, or even more, will have a more uniform and even temperature in all parts of such receptacle if constantly in motion, or stirred up.

Turning to the prior art for the elements of the first six claims of this patent and their combinations, we find patent to J. H. Therien, No. 646,327, dated March 27, 1900, for "drying-room," which has the four-walled room, with top and bottom; the air-circulating device, "a peculiarly-constructed fan used in the upper part of the drying-room, * * * which I place at the upper part of the drying-room for the purpose of driving down the hot air that naturally rises from the steam coil, * * * and causes the blades to work at such angles that more of the hot air is displaced and forced down at any one time than can be accomplished with any other fan heretofore known"; the heating-coil of steam pipes, which are located on or near the floor of the room and heat the room; and also "conveyers" for carrying the articles of clothing to be dried in and out of the room and holding them while in the room. This Therien drying-room in its apparatus differs from Barnes in two respects, viz., the location of its steam heating-coils and the form and operation of its conveyer or conveyers.

In the patent in suit, Barnes, the conveyer not only enters the room, but traverses said room above the heating-coils at substantially the same level; that is, it carries the clothing to be dried about from the one point of the room to another so that each article is exposed to the heat of all parts of the room on that level and also to the same up and down or horizontal currents of air; that is, each article gets precisely the same treatment in the drying-room. In Therien we have shown four carriers or conveyers, each used to carry the clothing in, hold it suspended thereon while in the room in the same place or location, and then carry it out. These are shoved or pushed in and pulled out, being suspended on rods with rollers, and held at the bottom from wobbling. The articles of clothing have no motion while in the room, unless imparted by a current of air. If, perchance, there is a difference of temperature in different parts of the room, then some articles are dried more than others. There may not be uniformity. If any clothing falls from the carriers, it drops upon the heating-coils below, and unless there is a grating they may become soiled, or if there be a grating then those which fall are so near the hot coils that they may become scorch-

ed or discolored. Again, as the heating-coils are on the floor, the air heated thereby rises and mixes with the down current coming from the fan, and eddies or currents are created, and the clothing swayed or blown from side to side, and may become detached from the carriers. The circulation is not as perfect, for the reason that the direct up current from the coils is met and opposed by the down current from the fan. Hence we have in Barnes two improvements over Therien—(1) the carrier traversing the room, and (2) the location of the heating-coils.

Turning now to Proctor, No. 525,921, of September 11, 1894, "drying machine," he says:

"The principal objects of my invention are, first, to provide a comparatively simple, durable, and efficient drying apparatus; second, to provide a compact drying apparatus in which a continuous circulation of the air is insured for drying as well as quickly absorbing moisture from suspended materials in a wet or other condition therein; and, third, to provide a drying apparatus adapted for the reception of a movable truck or similar appliance, which is adapted to support the fibrous or other materials in a wet or other condition in such manner as to be subject to the direct influence of a continuous and vigorous circulation of heated air or other medium to expeditiously dry out the same, and the apparatus so arranged as that it may be operated continuously—that is, materials subjected to the influence of the circulating drying medium therein and under such arrangement as that the materials may be readily removed therefrom and other materials quickly introduced, so as to be subject to the influence of such medium for a like purpose, without stopping or interfering with the perfect working of the appliance."

He has the same room, as a mere room; the fan in the upper part thereof to circulate the air; the movable trucks, on which are hung the articles to be exposed and dried; and the heating-pipes or coils, located on the sides of the room. Aside from mere detail of construction, we have Barnes, except the "conveyer traversing said room." The trucks or carriers of Proctor are pushed in when loaded with hanging clothing and pulled out through a door or doors when the drying is completed. They are stationary while in the room. These substantially are the trucks of Therien.

Turning to Hatfield patent, No. 217,102, dated July 1, 1879, for "improvement in clothes-drying machine," he says:

"The object of this invention is to furnish an improved machine for drying clothes and other similar articles, which shall be so constructed that the clothes will pass through the machine in one direction and the hot air in the other, which will allow the clothes to be attached outside of the drying-room, which will cool the clothes as they pass out, and will drop them automatically as they pass out, which will so direct the current of air as to effect the best results, which will allow the escape of the air to be controlled, which will economize the heat, and which will be simple in construction and convenient in use. The invention consists in means, substantially as hereinafter described, by which the clothes are secured, carried through a drying-chamber so as to automatically open weight-held doors and discharge without manual intervention; a counter-current of heated air blowing upon them as they proceed."

He plainly shows and describes an endless carrier or conveyer traversing the drying-room upon which the clothing is suspended and moved from point to point while undergoing the drying process. The clothing is attached thereto outside the chamber and carried in and about the

same and then out and automatically dropped. Hatfield has no fan. His steam pipes are thus described:

"The air is heated to dry the clothes by a system of steam pipes, V, which receive steam from any suitable steam-boiler or steam-generator, and which rest upon low walls or beams, W, which rest upon the bottom of the drying-chamber, L, and extend entirely across the said drying-chamber."

No point seems to be made as to the location of the pipes at or near the sides of the room. Here we have the idea and the element of the endless conveyer traversing the drying-room or chamber.

Without describing or mentioning other patents in this precise art, we will consider British patent to Norton, No. 2,685, dated October 29, 1864. This is a complex and a compound device or drying-room with machinery and apparatus for both drying and stretching the fabrics. It may also be used for either purpose separately. As a mere drying-room we have the endless carrier traversing the room, and, as the fabrics to be dried are attached to this part outside and before it enters the room, such fabrics are carried into and about the room, exposed to the heat, and then out. The fabrics are hung on the traveling conveyer. Steam-heating pipes or coils are shown on the sides of the room, and there may be a fan for circulating the air. I do not see that we have the fan, air-circulating device, if used, located at any particular point, or that stress is laid on the location of the heating-coils or pipes. In substance and effect we have the Barnes drying-room and apparatus shown; but we do not have his limitations as to the location of certain elements, such as the air-circulating device and steam heating-coils.

Barnes has written into each of his claims a negative element, the absence of heating-coils in the central part of the room. The defendant insists that this is what differentiates Barnes from the prior art, and that this insertion in his claims is what secured the allowance of his claims; that hence it may use the combination of the prior art, the drying-room of Barnes, so far as to construct, sell, and use a drying-room having the carrier traversing the room; the air-circulating device or fan located above the carrier and so arranged as to drive the air downward; and steam heating-pipes or coils located both on the side or sides and in the central part of the room. Defendant claims this is a mere return to the prior art, from which Barnes departed when he inserted the negative element, absence of heating pipes in the central part of the room, in his combination.

Says Walker on Patents (4th Ed.) p. 306, § 347:

"But if a patented combination differs from some older combination only in the omission of one of the parts of the latter, and in a resulting difference of mode of operation, the restoration of the older structure by adding the part which the patented combination omitted would not constitute an infringement of the latter."

He cites Shoemaker v. Merrow, 61 Fed. 948, 10 C. C. A. 181. The case cited is instructive, but not exactly in point here. What the court said was:

"But suppose it was not shown that Munsing anticipated him, and his patent was consequently held to be valid. The result would be the same. His claims in such case would necessarily be so construed as to exclude the

'finger' and its equivalents. After withdrawing a specific claim for this element in favor of Munsing, he would be precluded from setting it up. His patent, if valid, is for the combination minus the 'finger'—a device whose novelty consists in dispensing with this element. The respondents, as before suggested, do not infringe such a device; for they use the 'finger' and their machine will not work without it."

Here the drying-rooms will work, do effective work, with the heating-coils on the floor alone, or with heating-coils on the sides alone, or with heating-coils in both places. The general rule is:

"Addition to a patented machine or manufacture does not enable him who makes, uses, or sells the patented thing with the addition to avoid a charge of infringement. This is true, even where the added device facilitates the working of one of the parts of the patented combination, and thus makes the latter perform its function with more excellence and greater speed, or where the added part hinders the patented combination from having some of its minor merits." Walker on Patents (4th Ed.) § 347.

I am inclined to the opinion that Barnes has an improved combination of old elements and an improved result. I do not agree with the contention that he has revolutionized the clothes-drying art in laundries. The test of invention is mental conception, not larger sales, or improved results, or benefits conferred on mankind. All these are evidence of invention, but not invention as the Supreme Court of the United States has repeatedly decided. To hold that a combination of old and well-known elements in the old way with some modifications to which the skill of the ordinary mechanic skilled in the art is adequate, unless to meet a new and novel exigency, is patentable for the reason the benefit to mankind is valuable and extensive, is to reward every mechanic for exercising his skill, not his mental conceptions, by a monopoly, and is a misconception and works a perversion of the patent laws.

I am asked to grant this preliminary injunction on the authority of Barnes v. Lingo (C. C.) 151 Fed. 59. In that case all the claims of the patent here in suit and claims 1 to 17 and 21 to 24, inclusive, of a patent to Barnes, No. 684,778, for a clothes-drying machine were in issue and held valid. It is evident from the language of the opinion that the learned judge did not have the prior art before him, for he says:

"A great number of patents have been cited against these at bar to show that everything used by Barnes in his combination had been known for a long time in this art. I shall not attempt to refer to these patents separately, but shall only state that, after an examination of the evidence by the experts on both sides in reference to these patents, I conclude that all of them are patents in an art entirely different from the art involved in the Barnes patent."

The prior art is before me, and at least eight different prior patents in the precise art of this Barnes patent, viz., "clothes-drier." He says:

"I * * * have invented a new and useful improvement in clothes-driers. * * * My invention, speaking generally, belongs to that class of driers in which the articles to be dried are carried by an endless carrier, and, further, in carrying the goods secured to the endless carrier through a heated room, the goods being dried in their passage through the room. My invention has for its object to accomplish the drying in a more thorough and certain manner."

I think this device belongs to the art of drying clothing and similar articles by means of artificial heat and circulation of air in a suitable structure. The Norton patent speaks of cloth, yarn, such materials as require to be suspended when under the process of drying wool, velvets, and other fabrics, or other fibrous materials; Hatfield is for drying clothes and other similar articles; Proctor is for drying fibrous and other somewhat similar materials; Dixon is for drying collars and cuffs; Therien is for drying clothing, and shows shirts suspended in the drying-room; Proctor for drying any goods which can be hung or suspended on poles, etc.; McGlone is for drying clothes; Lumpp is for drying cloth or other textile, etc.

I am not much impressed with defendant's suggestion that this is a mere aggregation, and not a true combination. The object is to dry clothing as stated. This is the result. Hot air must be generated, radiated into the room, and circulated, and the clothing exposed to its efficient action. The various elements seem to be essential and to coact in producing the result.

I have gone through the affidavits presented, the file wrapper, the opinion in Barnes v. Lingo, and the prior art to see if this is a proper case for a preliminary injunction. Is there a reasonable doubt of the validity of these six claims in issue, or is it free from doubt, having in mind that the presumption is that the combination discloses patentable invention? In view of the opposing affidavits, the state of the prior art, and the decisions of the Circuit Court of Appeals in this circuit, I am of opinion that a preliminary injunction should not issue at this stage of the case at least. No evidence has been taken, and affidavits, when there is a square clash of expert evidence, with no opportunity of cross-examination, are not to be implicitly relied upon. I think great injustice might be done, should I grant this motion. If denied, there can be a speedy taking of testimony and a speedy final hearing. If such hearing is not consented to, there can be a renewal of the motion when the evidence is closed.

Motion denied.